1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

11  KEVIN FERRELL, *et al.*,

12          Plaintiffs,

13          v.

14  BUCKINGHAM PROPERTY
    MANAGEMENT,

15          Defendant.

16

17

No.  1:19-cv-00332-NONE-SAB

ORDER ADOPTING FINDINGS AND
RECOMMENDATIONS AND GRANTING
PLAINTIFFS' MOTION FOR
CONDITIONAL CLASS CERTIFICATION
AND PRELIMINARY APPROVAL OF THE
PROPOSED CLASS AND COLLECTIVE
ACTION SETTLEMENT

(Doc. Nos. 19, 24)

18      On November 25, 2019, plaintiffs Kevin Ferrell and Cheryl Baker filed a motion for

19  conditional class certification and preliminary approval of the proposed class and collective

20  action settlement in this action.  (Doc. No. 19.)  On January 21, 2020, the assigned magistrate

21  judge issued findings and recommendations, recommending that plaintiffs' motion be granted.

22  (Doc. No. 24.)  The findings and recommendations were served on the parties and contained

23  notice that any objections to the findings and recommendations were to be filed within fourteen

24  (14) days from the date of service.  No objections have been filed.

25      After reviewing the pending findings and recommendations and the parties' filings, the

26  undersigned identified several issues of concern regarding the proposed settlement and directed

27  the parties to submit responsive supplemental briefing, which plaintiffs filed on June 4, 2020.

28  (Doc. No. 27.)

1

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), this court has conducted a *de novo* review of this case.  Having carefully reviewed the entire file, including the plaintiffs' supplemental briefing (Doc. No. 27), the court concludes that the findings and recommendations are supported by the record and proper analysis.  In addition to the reasoning set forth in the magistrate judge's findings and recommendations (Doc. No. 24), below the court explains the additional considerations taken into account in granting the motion for conditional class certification and preliminary approval of the class and collective action settlement.

**A.    Summary of Proposed Settlement**

The parties have agreed to a Maximum Settlement Amount of $600,000 on a claims-made basis.  (Doc. No. 19-1, Exhibit 1 ¶¶ 34, 62 (Settlement Agreement).)  The "Net Settlement Amount" is what remains after deducting the following from the Maximum Settlement Amount: 1) attorneys' fees of up to 35% of the Maximum Settlement Amount, for a total of $210,000, plus reimbursement of litigation costs and expenses up to $35,000, for a combined total of $245,000 to Class/Collective Counsel; 2) Incentive Awards of up to $3,000 each to plaintiffs Ferrell and Baker, for a combined total of $6,000; 3) $3,750 to the Labor Workforce and Development Agency (LDWA) for its share of the Private Attorneys General Act of 2004 (PAGA) Settlement Amount; and 4) Settlement Administration Costs estimated to be $16,000. (Doc. No. 19 at 13.)  Additionally, a 25% portion of the PAGA Settlement Amount allocated to aggrieved employees ($1,250) will remain part of the Net Settlement Amount.  (*Id.*)

The Net Settlement Amount for the two categories of individuals is estimated to be $329,250.  (*Id.*)  The Class Members will receive 95% of the Net Settlement Amount, and the FLSA Collective is allocated the remaining 5% of the Net Settlement Amount.  (*Id.* at 14.)  The Class Settlement Amount is estimated to be $312,787.50, and will be distributed to claimants based upon their number of workweeks during the Settled Period.  (*Id.* at 13.)  If there is a 100% claims rate, the Class Members' distributions will range between $111.21 (for six months of workweeks) to $1,779.36 (for eight years of workweeks).  (*Id.* at 15.)  At least 63% of the Class Settlement Amount will be distributed to Claimants (the Minimum Distribution Floor).  (*Id.* at 13.)  If less than 63% is claimed, then each Claimant's share will be proportionately increased

on a *pro rata* basis per their number of workweeks.  (*Id.*)  Any unclaimed amount over the Minimum Distribution Floor will be used to pay defendant's share of payroll taxes and contributions in connection with the wages portion of the Estimated Class Settlement Shares and Estimated FLSA Settlement Shares.  (*Id.*)  Any further remaining amount will be retained by defendant.  (*Id.*)

For the FLSA Settlement Amount, approximately $16,462.50 will be distributed to FLSA Collective Members based on their number of workweeks.  (*Id.*)  If there is a 100% claims rate, the FLSA Collective Members' distributions will range between $5.85 (for six months of workweeks) to $93.65 (for eight years of workweeks).  (*Id.* at 15.)  The entire FLSA Settlement Amount will be paid out to the FLSA Collective.  (*Id.* at 13.)

**B.     Conflicts of Interests**

On May 5, 2020, the undersigned directed the parties to submit supplemental documentation addressing whether plaintiffs' firm has any conflicts of interest in this case with plaintiffs Kevin Ferrell and Cheryl Baker, Class Members, defendant Buckingham Property Management, defendant's counsel, or the *cy pres* recipient Legal Aid at Work.  (Doc. No. 26 ¶ 8.)  Plaintiffs' counsel avers that there are no conflicts of interest in this case.  (Suppl. Aiwazian Decl. ¶ 69; Suppl. Davis Decl. ¶ 3.)  Accordingly, the court adopts the pending findings and recommendations as to the finding that plaintiffs and their counsel satisfy the adequacy of representation requirement of Federal Rule of Civil Procedure 23(a)(4).

**C.     Valuation of Plaintiffs' Claims**

The maximum potential damages for plaintiffs' claims are approximately $11,353,147.53.[1]  (*See* Doc. No. 24 at 31; Aiwazian Decl. ¶ 26(a)–(l).)  Thus, the Maximum

---

[1]  As requested, plaintiffs' counsel has provided supplemental documentation showing that the valuation of plaintiffs' FLSA overtime and minimum wage claims included the liquidated damages provided by law.  (Suppl. Aiwazian Decl. ¶ 17.)  The court calculates the maximum potential damages as follows:  $1,026,334.45 + $901,945.24 + $684,103.09 + $601,189.72 + $1,368,206.17 + $1,368,206.17 + $1,634,505.60 + $2,207,800.00 + $401,500 + $146,254.00 + $684,103.09 + $329,000.00 = $11,353,147.53.  Plaintiffs' updated calculations slightly differ from this court's and the magistrate judge's calculations, particularly because plaintiffs used a different figure for the FLSA minimum wages claim in their supplemental briefing.  (Compare Suppl. Aiwazian Decl. ¶ 69, with Aiwazian Decl. ¶ 26(d).)  Plaintiffs are directed to address this discrepancy in advance of the final approval hearing before the magistrate judge.

Settlement Fund of $600,000 is approximately 5.3% of recovery for plaintiffs' maximum

potential claims.  After deducting attorneys' fees proposed at 35% of the Maximum Settlement

Amount, costs, and other amounts described above, the Class Settlement Amount is estimated to

be $312,787.50.  (Doc. No. 24 at 31; Doc. No. 27 at 17; Settlement Agreement ¶ 44.)  The

FLSA Settlement Amount is $16,462.50, which is only 1% of the original $1,503,134.96

valuation for the FLSA claims.[2]  (Doc. No. 24 at 31.)  Therefore, the total maximum estimated

payout to the Class Members and the FLSA Collective is approximately $329,250.  (Doc. No.

24 at 31.)  This amounts to less than 3% of the original valuation.  (*See id.*)

According to plaintiffs, "at least 63% of the Class Settlement Amount ('Minimum

Distribution Floor') will be distributed to Class Members who submit timely and valid Claim

Forms ('Claimants') and the entire FLSA Settlement Amount will be distributed to Proposed

FLSA Collective Members who submit valid and timely FLSA Opt-in Forms ('FLSA Collective

Members')."  (Doc. No. 27 at 17–18.)

"[I]t is estimated that the average Estimated Class Settlement Share to Class Members is

approximately $389.24 and the average Estimated FLSA Settlement Share to a Proposed FLSA

Member is approximately $20.49."  (*Id.* at 18.)  While the court notes the significant discounts

from plaintiffs' original valuations of their claims, the court also finds persuasive the Class

Members' deposition testimony and declaration summaries affirming that they in fact received

payment for all hours worked, including overtime, and understood defendant's policies

prohibiting off-the-clock work and requiring recordation of all hours worked.  (Doc. No. 27 at

14.)  The proposed settlement amount is somewhat near the range of the percentage recoveries

that district courts have found to be reasonable.  *See, e.g.*, *Martin v. Sysco Corp.*, No. 1:16-cv-

00990-DAD-SAB, 2019 WL 3253878, at *5 (E.D. Cal. July 19, 2019) (granting preliminary

approval of settlement encompassing approximately 11% of total value of meal and rest break

claims, adding caveat that "the court does not presently have material before it sufficient to

---

[2]  $16,462.50 / $1,503,134.96 = 0.01.

1    make a reasoned determination of whether the settlement amount proposed in the Agreement is

2    adequate [but] [r]ather than denying preliminary approval of the Agreement in its entirety,

3    however, the court finds that the most prudent course is to raise the issue for the parties'

4    awareness and invite them to provide additional argument and evidence in preparation for the

5    final fairness hearing [as] [i]t may well be that in light of the serious litigation risks faced by

6    plaintiff and the class, settlement at such a dollar amount is warranted in this case."); *Balderas

7    v. Massage Envy Franchising, LLC*, No. 12-cv-06327-NC, 2014 WL 3610945, at *5 (N.D. Cal.

8    July 21, 2014) (granting preliminary approval of class settlement where net settlement

9    represented 5% as within the range of possible approval based on risks and expenses of

10   continued litigation, with caveat that "at the final approval hearing the parties must be prepared

11   to present evidence that the Court's calculation of the percentage of the maximum recovery is

12   incorrect, or to explain why the especially low recovery is warranted based on the circumstances

13   of this case.").  In addition, the recovery is allocated such that employees will receive payouts

14   that scale directly with their number of workweeks.  (Doc. No. 19 at 13.)

15          Plaintiffs assert that the settlement's recovery rate and *pro rata* allocation method is

16   appropriate and fair for several reasons.  (Doc. No. 27 at 6–12.)  First, the settlement fund was

17   determined only after "extensive discovery and investigation" that allowed plaintiffs' counsel to

18   "calculate the value of the claims and the monetary recovery that could potentially be awarded

19   to Class Members and FLSA Members[.]"  (Doc. No. 27 at 7.)  The maximum potential

20   recovery was then discounted, taking into account several factors, including:  1) overcoming

21   defendant's arguments and evidence that it properly provided meal and rest breaks, paid for all

22   hours of work, and properly reimbursed business expenses; 2) the obstacles inherent in

23   satisfying the requirements to certify a class, certify a collective, and satisfy manageability

24   requirements; 3) the challenges of proving the elements of each cause of action; 4) the

25   derivative nature of many of the claims; 5) the costs and expenses of further litigation; and 6)

26   the recovery rate, even if plaintiff were to prevail, after years of continued and costly litigation.

27   (*See* Suppl. Aiwazian Decl. ¶¶ 16–18, 21–23, 26–28, 30–31, 37–39, 42–43, 48–49, 52–53, 59–

28   69; Lynch Decl. ¶¶ 9–11.)

Second, plaintiffs assert that the *pro rata* allocation formula employed here is fair because each Class and FLSA Collective Member is allocated a payout that scales directly with their workweeks, and any Class and FLSA Collective Member may dispute the number of workweeks credited to them.  (Doc. No. 19 at 33.)

Finally, plaintiffs' counsel avers that, based on his experience and judgment, this settlement is "within a reasonable range of recoveries for this type of litigation, and is fair, reasonable, adequate, and in the best interest[s]" of the Class and FLSA Collective Members. (Aiwazian Decl. ¶ 28.)

While "a larger award was theoretically possible, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal citations and quotation marks omitted)). For these reasons, the court will adopt the pending findings and recommendations which recommend the preliminarily approval of the proposed settlement.

**D.    Attorneys' Fees**

Here, the Settlement Agreement provides that class counsel will seek an award of 35% of the Settlement Fund, equivalent to $210,000.  (Doc. No. 19 at 12.)  This is higher than the 25% benchmark for the Ninth Circuit, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011), but not a significant departure from several wage-and-hour class actions brought in the Eastern District of California.  *Barbosa*, 297 F.R.D. at 450 (listing cases where courts approved attorneys' fees ranging between 30 to 33.3 percent of total settlement). Plaintiffs' counsel asserts that this 35% award is appropriate considering the time and effort expended by counsel, the contingency fee basis of the representation, and the relative strengths and weaknesses of the claims.  (Doc. No. 19 at 26; Doc. No. 27 at 17–19.)  After further inquiry from the court about the size of the fee request, plaintiffs submitted a supplemental declaration noting that their firms have spent "approximately 645 hours in connection with this matter." (Suppl. Aiwazian Decl. ¶ 7; Suppl. Davis Decl. ¶ 4.)  Plaintiffs claim that a $785 hourly rate would be a reasonable hourly rate of compensation for Lawyers for Justice, PC's efforts in this

matter, and $700 an hour for services provided by Protection Law Group LLP, given that state courts have approved their attorneys' fees requests in other similar cases based on hourly rates between $780.77 to $845.64.  (Suppl. Aiwazian Decl. ¶ 7.)  Assuming the $785 hourly rate for Lawyers for Justice, PC's 475.50 hours, and the $700 hourly rate for Protection Law Group LLP's 169.30 hours, a preliminary lodestar calculation yields a lodestar of $491,777.50.[3]  Thus, the request for $210,000 in attorneys' fees is less than half of the preliminary lodestar calculation.

The undersigned is satisfied, for the purposes of preliminary approval only, by the justifications provided by plaintiffs' counsel to depart from the 25% benchmark.  However, counsel is reminded that at the final approval stage, the assigned magistrate will carefully re-examine the award of attorneys' fees and conduct a final lodestar cross-check.  (Doc. No. 24 at 36) (noting that the court "is not likely to approve an amount over the Ninth Circuit's benchmark of twenty-five (25%) percent absent a showing that counsel achieved extraordinary results or otherwise prove they are entitled to such an amount.")

**E.      Possibility of Reversion and Estimated Value of Payroll Taxes**

Under the reversion clause of the Settlement Agreement, any unclaimed amount above 63% of the Net Settlement Amount will essentially revert to defendant to pay the employer share of payroll taxes and any further remainder not so used will be retained by defendant. (Doc. No. 24 at 8–9, 36–37.)  The undersigned had, and continues to have, serious concerns regarding the reasonableness of that reversion clause.  Accordingly, the court directed the parties to submit supplemental briefing addressing the fairness and reasonableness of reverting unclaimed amounts above the Minimum Distribution Floor to defendant's share of payroll taxes and contributions (Employer Taxes), and the remaining amount to be retained by defendant (the Remainder).  (Doc. Nos. 19-1 ¶ 16; 24 at 10; 26 ¶¶ 4–5.)  The undersigned further directed submission of supplemental documentation regarding the estimate of the Employer Taxes with respect to the wages portion of the settlement.  (*Id.*)

---

[3]  $785(475.5 hours) = $373,267.50; $700(169.3 hours) = $118,510.  $373,267.50 + $118,510 = $491,777.70.

1    On June 4, 2020, plaintiffs provided supplemental documentation estimating its employer

2  payroll taxes and contributions as approximately $21,895.13.[4]  (Doc. No. 27 at 24; Suppl.

3  Aiwazian Decl. ¶ 4.)  Under the terms of the settlement, defendant will pay any additional

4  amount sufficient to cover Employer Taxes if the Remainder is insufficient to cover all

5  Employer Taxes.  (Settlement Agreement § 67.)

6    The parties assert that the reversionary component of their Settlement Agreement is fair

7  and reasonable for the following reasons:  1) the Class Notice fully informs Class Members

8  about the structure of the Settlement (including the reversionary clause) in clear terms, and

9  therefore, are able to make informed decisions on whether to participate; 2) the parties are

10  working to enhance participation; 3) the reversion clause is the product of an arm's-length

11  negotiation facilitated by a mediator; and 4) the "Minimum Distribution Floor (63% of the Class

12  Settlement Amount) guarantees that Class Members will receive significant percentages of

13  settlement funds."  (Doc. No. 27 at 22–23.)

14    One of the three red flags of tacit collusion by the parties in connection with proposed

15  class action settlements is where the parties agree that funds not awarded to class members will

16  revert to the defendants rather than be added to the class fund.  *In re Bluetooth Headset*, 654

17  F.3d at 947; *see also In re Myford Touch Consumer Litigation,* No. 13-CV-03072-EMC, 2018

18  WL 10539266, at *1 (N.D. Cal. June 14, 2018) (noting that a "claims-made" settlement is the

19  equivalent of a common fund settlement with a reversion to the defendant and, as such, is

20  "disfavored"); *Reyes v. Bakery and Confectionery Union and Industry International Pension*

21  *Fund*, No. 14-CV-05596-JST, 2017 WL 7243239, at *6 (N.D. Cal. Jan. 23, 2017) ("The

22  Settlement has only one obvious deficiency.  Specifically, the Settlement has a reversion clause,

23  whereby any remaining money in the Settlement Fund after distributions to the class reverts to

24  the Fund. [citation omitted].  This Court generally disapproves of reversion clauses."); *Dudum*

25  *v. Carter's Retail, Inc*., No. 14-CV-00988-HSG, 2016 WL 7033750, at *5 (N.D. Cal. Dec. 2,

26  ───────────────

27  [4]  This assumes a 100% claims rate, based on a Maximum Settlement Amount of $600,000,
with $329,250 available as the Net Settlement Amount for distribution to Claimants and FLSA
Collective Members.  (Suppl. Aiwazian Decl. ¶ 4.)  The Employer Taxes represent roughly

28  3.7% of the Maximum Settlement Amount and 6.7% of the Net Settlement Amount. (*Id.*)

2016) (district court granting final approval of a settlement with such a clause "notwithstanding its view that reversionary clauses are generally disfavored and must be scrutinized closely").

The undersigned recognizes that under some unique circumstances settlements which include such a reversion clause may be found reasonable. *See Davis*, No. 1:13-cv-01211-LJO-BAM, 2015 WL 6697929, at *6 (noting that the transparent disclosure of reversionary settlement terms favor the granting of final approval); *Garcia v. City of King City*, No. 14-cv-01126-BLF, 2017 WL 363257, at *9 (N.D. Cal. Jan. 25, 2017) (approving reversion, in part, because of arm's-length, non-collusive negotiations); *Hightower v. JP Morgan Chase Bank, N.A.*, No. CV 11-1802, 2015 WL 9664959-PSG, at *7 (C.D. Cal. Aug. 4, 2015) ("A reversion clause certainly makes the Court suspicious, but in this instance, after reviewing the respective positions of the Parties, and considering the many weaknesses of Plaintiffs' case, the Court is persuaded that the reversion clause does not make the Settlement Agreement unfair nor does it show collusion among the parties."). In light of the reasons cited in the supplemental submissions, as well as the parties' assertions regarding the weaknesses of plaintiffs' case, the court will at this time adopt the magistrate judge's finding that the reversion provision is arguably within the bounds of reasonableness, but will do so only for purposes of granting preliminary approval. At the final approval stage, the parties must be prepared to more fully develop their justifications for the court's permitting defendant to, in effect, retain unclaimed funds, clearly addressing whether defendants will likely enjoy a windfall as a result and, if so, demonstrating the fairness of the provision under the circumstances of this case. The parties are forewarned that if it appears defendants are likely to receive an unwarranted windfall from the reversion, the court is unlikely to grant final approval of the settlement. *See Wilson v. Metals USA, Inc.*, No. 2:12-cv-00568-KJM-DB, 2019 WL 1129117, at *7 (E.D. Cal. Mar. 12, 2019).

**F.     The Fair Labor and Standards Act Collective Action**

The parties assert that there is a bona fide dispute about whether defendants complied with the Fair Labor and Standards Act's (FLSA) minimum wage and overtime compensation requirements. (Doc. No. 27 at 12–15.) While plaintiffs assert that defendant violated the FLSA by requiring them and other putative class members to "perform job duties before clocking in,

after clocking out, and during meal breaks" without pay as a matter of policy, defendant contends that "its overtime policies and practices comply with federal and California state law, and that its property employees are paid over the California and federal minimum wage rate for all hours worked." (*Id.* at 6, 13.)  Defendant contends that "it maintained and enforced legally compliant wage-and-hour policies," including requiring that "ALL time (actual hours) worked must be accurately reported on [employees'] time record and submitted to [employees'] supervisor for review and approval." (*Id.* at 13 (emphasis in original).)  Additionally, defendant argues that it was never aware "that work had been performed off-the-clock, if any"; and that the existence of "highly individualized questions of fact" make it difficult to determine whether and to what extend defendant failed to pay any overtime wages—and what, if any, back wages are owed—let alone at a class or representative level.  (*Id.* at 8–9.)

Because the parties have sufficiently demonstrated that a bona fide dispute exists in this case, including through supplemental briefing revealing the Class Members' deposition testimony and declaration summaries, the court adopts the findings and recommendations with respect to the plaintiffs' FLSA Collective Action.  *See McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. 10-cv-5243-SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012) (finding bona fide dispute, in part, because of disputes over the proper damages measure and the amount of overtime hours plaintiffs actually worked); *Nen Thio v. Gengi, LLC*, 14 F. Supp. 3d 1324, 1340 (N.D. Cal. 2014) (noting that a bona fide dispute may exist over issues including "computation of back wage").

## G.   California Labor and Workforce Development Agency

PAGA requires that a proposed settlement be submitted to the LWDA.  Cal. Lab. Code § 2699(l)(2); *see also Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (noting that proposed settlement should be submitted to the LWDA to allow it to comment if it so desires) (citing *Ramirez v. Benito Valley Farms, LLC*, No. 16-cv-04708-LHK, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017)).

In their supplemental briefing, plaintiffs aver that the proposed settlement was submitted to the LWDA on April 8, 2020.  (*See* Doc. No. 27 at 24; Suppl. Aiwazian Decl. ¶ 71.)  The

1  undersigned therefore adopts the magistrate judge's recommendation to grant preliminary

2  approval of the PAGA settlement.

3  **CONCLUSION**

4  Accordingly, IT IS HEREBY ORDERED that:

5  1.   The findings and recommendations, filed January 21, 2020 (Doc. No. 24), are

6  ADOPTED IN FULL;

7  2.   The motion for preliminary approval of the proposed settlement (Doc. No. 19), is

8  GRANTED and the stipulation and settlement are preliminarily approved as fair,

9  reasonable and adequate within the meaning of Federal Rule of Civil Procedure

10  23 subject to final consideration at the fairness hearing provided for below;

11  3.   The following Class and Proposed FLSA Collective is CERTIFIED for settlement

12  purposes only:

13  All current and former Property Employees of Defendant within the
State of California from August 8, 2010 to the date this Order is

14  signed by the court ("Settled Period").  "Property Employees"
means non-exempt employees with the following job positions

15  during the Settled Period: Area Relief Manager, Assistant
Community Manager, Community Manager, Contact Assistant

16  Manager, Grounds Keeper, Janitor, Maintenance Technician,
Porter, Residential Service Coordinator, and Security.

17

18  4.   The court finds that, for purposes of the settlement, the above-defined Class meets

19  the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) for class

20  certification;

21  5.   Plaintiffs Cheryl Baker and Kevin Ferrell are appointed as the Class

22  Representatives for the Class and Proposed FLSA Collective;

23  6.   Edwin Aiwazian, Arby Aiwazian, and Joanna Ghosh of Lawyers for Justice, PC,

24  and Amir Nayebdadash and Heather Davis of Protection Law Group LLP, are

25  appointed as counsel for the Class and Proposed FLSA Collective;

26  7.   The proposed language and manner of distributing the notice of settlement are

27  approved as the best notice practicable under the circumstances;

28  /////

8.     Simpluris, Inc., is appointed as the Settlement Administrator to administer the settlement pursuant to the terms of the settlement agreement; and

9.     Notice to the Class Members and FLSA Collective shall include the date of the final approval hearing to be set by the assigned magistrate judge, who will address in findings and recommendations whether the proposed settlement, on the terms and conditions set forth in the stipulation, is fair, reasonable, and adequate and should be approved by the court; whether a judgment as provided in the stipulation should be entered finally approving the settlement; and whether class counsel's applications for attorneys' fees, reimbursement of costs, and service payments are adequately supported and appropriate.  The court may continue the Final Fairness Hearing without further notice to the members of the class.

IT IS SO ORDERED.

Dated:   **July 29, 2020**

UNITED STATES DISTRICT JUDGE