UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN FERRELL, et al., | No. 1:19-cv-00332-NONE-SAB |
| Plaintiffs, | |
| v. | ORDER DIRECTING THE FILING OF SUPPLEMENTAL BRIEFING RE PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND FOR ATTORNEYS' FEES AND COSTS |
| BUCKINGHAM PROPERTY MANAGEMENT, | |
| Defendant. | |
| | (Doc. Nos. 32 & 33) |

Plaintiffs Kevin Ferrell and Cheryl Baker, individually and on behalf of others, filed motions for final approval of their class-action settlement agreement and for attorneys' fees and costs on January 6, 2021. (Doc. Nos. 32 & 33.) The assigned magistrate judge issued findings and recommendations, recommending that their motions be granted, on February 10, 2021. (Doc. No. 36.) The findings and recommendations were served on the parties and contained notice that any objections to them were to be filed within fourteen (14) days from the date of service. (*Id.* at 60.) No objections have been filed, and the time for filing objections has passed.

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), this court has conducted a de novo review of this case. Having carefully reviewed the entire file, the court orders the parties to file supplemental briefing and documentation addressing the following issues:

1

1. California Labor Code § 2699(i) prescribes the distributions for civil penalties received under the Private Attorney General Act:

> [C]ivil penalties recovered by aggrieved employees shall be distributed as follows: 75 percent to the Labor and Workforce Development Agency . . . and 25 percent to the aggrieved employees.

Cal. Lab. Code § 2699(i).

The Settlement Agreement, (Doc. No. 19-1, Exhibit 1 ("Settlement Agreement")), allocates $5,000 as the payment under § 2699(i), of which $1,250 becomes the Employees' PAGA Portion. (Settlement Agreement ¶¶ 15, 33, 42, 66; Doc. No. 32-1 at 4.) However, the Settlement Agreement also permits some of the Employees' PAGA Portion to revert to defendant. (*See* Settlement Agreement ¶¶ 10, 67.) Is the Employees' PAGA Portion distributed "to the aggrieved employees," § 2699(i), when a portion of that amount will revert to defendant?

2. The maximum payment under the settlement agreement is $600,000. (Settlement Agreement ¶ 34.) A portion of that $600,000 is allocated to the "Class Settlement Amount," from which members of the proposed class are paid their Individual Class Payments, which are based on how many weeks participating employees worked for defendant during the relevant period ("Workweeks"). (*Id.* ¶¶ 10, 67, 69(a).) At least 63% of the Class Settlement Amount must be sent to the class, but up to 37% may revert to defendant.

If there are any unclaimed Workweeks, the payments for those unclaimed Workweeks will revert to defendant. However, there is a limit: if less than 63% of the Workweeks are claimed, then the claimed portions increase *pro rata* to meet the 63% threshold. Thus, the maximum amount that can revert to defendant is 37% (100%−63%) of the Class Settlement Amount. (*See* Doc. No. 36 at 10–11.)

When the settlement was preliminarily approved, the court did not know whether (or to what extent) the reversionary clause would in fact reduce the total recovery of the class because no claims had yet been filed. (*See* Doc. No. 24 at 37 n.23 (in findings and recommendations, noting "[w]hile such reduction in attorney's fees may ultimately revert back to [d]efendant, it will not if sufficient claims forms are returned.").)

////

We now know that not all claim forms were returned.  After tabulating all expenses, $324,556.03 is slated to become the Class Settlement Amount.  (Doc. No. 32-1 at 18.)  Only 147 members of the class participated, accounting for 24.15% of the Workweeks.  (Doc. No. 35-2 ¶ 17.)  Thus, 24.15% of the Class Settlement Amount has been claimed—far short of the 63% minimum threshold. Those who claimed an amount will thus have their proposed amounts increased *pro rata*, and 37% is scheduled to revert to defendant.  (*See id.*; Settlement Agreement ¶ 67; Doc. No. 36 at 13.)  When all is said and done, the parties ask to revert the maximum amount—$105,411.40—to defendant.  (Doc. No. 35-2 ¶ 23.)

With this information in hand, the court is reexamining the reversion clause of the settlement.  One underlying concern with reversion clauses is that they are the product of collusion between class counsel and defendants, who agree to a lower overall settlement that benefits counsel at the expense of the proposed class.  *Briseno v. Henderson*, No. 19-56297, ___ F.3d ____, 2021 WL 2197968, at *9 (9th Cir. June 1, 2021).  In addition, the Ninth Circuit has implied that a low participation rate could be a reason to reject a reversion clause.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Lit.*, 895 F.3d 597, 612 (9th Cir. 2018) (holding district court did not abuse discretion in determining reversion clause was reasonable in part due to "the actual trend in class member participation").

The record indicates that at least as of the date of the motion for final approval, of the 920 notices sent to current or former employees, only 147 elected to participate.  One conceivable explanation for low participation is that a defendant pressured class members not to participate.[1]  It is logical to assume that defendant would have a greater ability to pressure current employees, rather than former employees.  Should that have occurred, the settlement might not be fair and reasonable, particularly with respect to any current employees who are not participating in the class, because they are releasing their claims but obtaining no relief.  With these potential issues in mind: /////

---

[1] The court has no reason to believe this occurred in this case and, to the contrary, has been informed that defendant encouraged participation (*see* question 2.b below), but the low participation numbers are concerning enough to merit a probing inquiry.

3

      a.    Assuming the participation rate remains at approximately 16% (147 participating out of 920 noticed), why is a reversionary clause reasonable under such circumstances? For example, are there known explanations for the low participation?

      b.    At the final approval hearing, defendant's counsel "represented that [d]efendant engaged in informal internal efforts to encourage current employees to exercise their right to participate in the Settlement." (Doc. No. 36 at 43.) What were those efforts?

      c.    Of the 920 notice packets sent out, how many were sent to current employees (as measured at the time that responses were due) and how many to former employees?

      d.    At what rate did each group (current and former employees) participate in the settlement?

The parties shall file supplemental briefing and documentation responsive to these issues within fourteen (14) days of the date this order is entered.

IT IS SO ORDERED.

Dated: **June 10, 2021**

_____
UNITED STATES DISTRICT JUDGE