UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN FERRELL and CHERYL BAKER, on behalf of themselves and others,<br><br>Plaintiffs,<br><br>v.<br><br>BUCKINGHAM PROPERTY MANAGEMENT,<br><br>Defendant. | No. 1:19-cv-00332-NONE-SAB<br><br>ORDER DECLINING TO ADOPT FINDINGS AND RECOMMENDATIONS AND DENYING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS<br><br>(Doc. Nos. 32, 33, 36) |

Plaintiffs Kevin Ferrell and Cheryl Baker, individually and on behalf of others, filed motions for final approval of their class-action settlement agreement in this case and for attorneys' fees and costs on January 6, 2021. (Doc. Nos. 32 & 33.) The assigned magistrate judge issued findings and recommendations, recommending that their motions be granted, on February 10, 2021. (Doc. No. 36.) The findings and recommendations were served on the parties and contained notice that any objections to them were to be filed within fourteen (14) days from the date of service. (*Id.* at 60.) No objections were filed, and the time for filing objections has passed. On June 11, 2021, the court entered an order directing the parties to file supplemental briefing addressing concerns that the undersigned had with respect to the pending motions. (Doc.

/////

No. 37.) The parties filed supplemental briefing, together with declarations, on June 25, 2021. (Doc. No. 38.)

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), this court has conducted a de novo review of this case. For the reasons that follow, the court declines to adopt the pending findings and recommendations.

## DISCUSSION

### A.     Reversion of Employee's PAGA Portion

Briefly described, the maximum payment under the settlement agreement is $600,000. (Doc. No. 19-1, Exhibit 1 ("Settlement Agreement") ¶ 34.) A portion of that $600,000 is allocated to the "Class Settlement Amount," from which members of the proposed class are paid their Individual Class Payments, which are based on how many weeks participating employees worked for defendant during the relevant period ("Workweeks"). (*Id.* ¶¶ 10, 67, 69(a).) At least 63% of that amount (the Minimum Distribution Floor) must be distributed to the class; if under 63% of the Workweeks are claimed, then claimants' shares are increased *pro rata*. Any unclaimed Workweeks beyond 63% of the Class Settlement Amount—called the Remainder— revert to defendant. (*Id.* ¶¶ 52, 35, 67.) Thus, the maximum possible reversion is 37% (100%−63%) of the Class Settlement Amount. (*Id.* ¶ 67.)

Only 147 members of the class participated, accounting for 24.15% of the Workweeks. (Doc. No. 35-2 ¶ 17.) Thus, 24.15% of the Class Settlement Amount has been claimed—far short of the 63% minimum threshold. Those who claimed an amount have thus had their proposed amounts increased *pro rata*, and 37% is scheduled to revert to defendant. (*See id.*; Settlement Agreement ¶ 67.) Based upon the above, the parties now propose setting a $324,556.03 Class Settlement Amount, with 63% of that ($204,470.30) being distributed to the participating class members. (Doc. No. 35-2 ¶¶ 19, 23.)

After reviewing the Settlement Agreement and the pending findings and recommendations, the court ordered the parties to submit additional briefing addressing the issue of whether the reversion is permissible here because plaintiffs' claims include civil penalties

/////

2

brought under the Private Attorney General Act ("PAGA"). (Doc. No. 37.) PAGA prescribes the distributions for civil penalties received for claims brought thereunder:

> [C]ivil penalties recovered by aggrieved employees shall be distributed as follows: 75 percent to the Labor and Workforce Development Agency . . . and 25 percent to the aggrieved employees.

Cal. Lab. Code § 2699(i).

Plaintiffs' counsel has now twice averred that in reaching the final settlement amount of $600,000, the parties took the maximum value of each of plaintiffs' claims, calculated various discounts, and came to a final agreed-upon value. (Doc. Nos. 19-1 at 20–23 (declaration filed in connection with motion for preliminary approval); 27 (declaration filed in response to undersigned's order for additional briefing).) In the end, the parties settled on a $5,000 payment for the PAGA civil penalties, with 25%, or $1,250, becoming the Employee's PAGA Portion. (Settlement Agreement ¶¶ 15, 33, 42, 66; Doc. No. 32-1 at 4.)

In its order for supplemental briefing, the court expressed concern that reverting the Employee's PAGA Portion violates PAGA. (Doc. No. 37 at 2.) Specifically, the court indicated:

> The Settlement Agreement, (Doc. No. 19-1, Exhibit 1 ("Settlement Agreement")), allocates $5,000 as the payment under § 2699(i), of which $1,250 becomes the Employee's PAGA Portion. (Settlement Agreement ¶¶ 15, 33, 42, 66; Doc. No. 32-1 at 4.) However, the Settlement Agreement also permits some of the Employee's PAGA Portion to revert to defendant. (*See* Settlement Agreement ¶¶ 10, 67.) Is the Employee's PAGA Portion distributed "to the aggrieved employees," § 2699(i), when a portion of that amount will revert to defendant?

(Doc. No. 37 at 2.)

The parties contend that the proposed reversion does not violate PAGA. (Doc. No. 38 at 3.) The parties emphasize that the overall proposed payment to employees is $204,470.30, which exceeds the $1,250 Employee's PAGA Portion, implying that this is all that is required in order to satisfy the requirements of PAGA.[1] (*Id.*) Put another way, the parties contend that money is fungible, and so long as more than $1,250 is distributed to the class and $3,750 to the Labor and

/////

---

[1] The parties' briefing states the participating class members are scheduled to receive $1,750 (*see* Doc. No. 38 at 3), but this reference appears to reflect a mathematical error.

3

Workforce Development Agency, § 2699(*i*) is satisfied. However, the parties cite no authority in support of their argument in this regard.

Instructive on this point is the decision in *Millan v. Cascade Water Services, Inc.*, 310 F.R.D. 593 (E.D. Cal. 2015). There, the court considered a motion for preliminary approval of a class-action settlement agreement, which included claims brought under the federal Fair Labor Standards Act ("FLSA"). The court noted that portions of the FLSA award were scheduled to revert to the defendant and found that to be unacceptable in light of FLSA's purpose:

> The Court is concerned that a portion of the settlement fund is reversionary. In fact, if fewer than 100% of the absent class members decide to participate in the Settlement, funds revert to the Defendant. Claims made settlements with reversions to a defendant are strongly disfavored. . . .
>
> Other courts in this District have noted, and this Court agrees, that where "a statute's objectives include deterrence, as does the FLSA's, 'it would contradict these goals to permit the defendant to retain unclaimed funds.' " *Khanna v. Inter–Con Sec. Sys. Inc.,* 2012 WL 4465558, at *11 (E.D. Cal. 2012) (quoting, *inter alia, Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1308 (9th Cir. 1990)).

*Id.* at 612 (additional citations following *Khanna* omitted). The court in *Millan* denied the motion for preliminary approval and noted that to receive preliminary approval in the future, "the portion of the settlement attributed to FLSA violation cannot revert to the Defendant if unclaimed; the parties may remove the reversion entirely or name an appropriate *cy pres* recipient for unclaimed funds." *Id.* at 613.

Deterrence is one of PAGA's goals. *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 379 (2014) ("The solution [to insufficient enforcement of Labor Code] was to enact civil penalties for Labor Code violations significant enough to deter violations." (internal quotation marks and citation omitted)). In *Iskanian*, the California Supreme Court considered whether employers could require employees to waive their rights under PAGA in employment contracts. The court concluded that PAGA rights cannot be waived because such waivers violated two public policies. *Id.* at 383. First, because "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person

4

or property of another, or violation of law, whether willful or negligent, are against the policy of the law," *id.* at 382 (quoting Cal. Civ. Code § 1668), the effect of permitting waivers would be to exempt employers from responsibility of their own injuries to their employees.  Second, PAGA's private enforcement mechanism is in effect a *qui tam* action, and the real party in interest is the state. *Id.* Such an action is "fundamentally a law enforcement action designed to protect the public and not to benefit private parties." *Id.* at 381 (internal quotation marks and citation omitted).  Because individuals may not "waive the advantage of . . . a law established for a public reason . . . by a private agreement," *id.* at 382–83 (quoting Cal. Civ. Code § 3513), the California Supreme Court held that employees could not waive their right to sue under PAGA.[2]

*Iskanian* therefore stands for the proposition that PAGA civil penalties exist to deter employment-law violations.  Following that logic, the 25% portion must be allocated to aggrieved employees, and employees cannot, by a private agreement, waive their right to those funds.  Doing so would exempt employers from their own violations of the law and waive the advantage of a law established for a public reason by private agreement.[3]

Here, as mentioned above, the parties appear to contend that the money being distributed to the class is fungible, and because more than $1,250 will be distributed to participating class members overall, application of the reversion clause to the entire settlement amount (as opposed to just the non-PAGA amount) is appropriate. (Doc. No. 38.)  Under this reasoning, requiring a separate share for the Employee's PAGA Portion appears to place form over substance.  But there is a substantial flaw in that logic.  The Settlement Agreement specifically allocates $5,000 to PAGA civil penalties, designated as the "PAGA Settlement Amount" in the Settlement Agreement.  (Settlement Agreement at ¶ 66.)  That entire amount is included within the Maximum Settlement Amount of $600,000.  (*Id.* at ¶ 34.)  A number of items are then to be

---

[2] *Iskanian* points to a broader problem with the reversion provision.  In their motion for final approval, plaintiffs argue that the reversion provision in their settlement agreement is appropriate because "California courts have held that reversion can be appropriate where (as here) deterrence is not a factor." (Doc. No. 32-1 at 22 (citing *Cundiff v. Verizon Cal., Inc*., 167 Cal. App. 4th 718, 728–29 (2008).)  But here, deterrence is a factor with respect to the PAGA payment.

[3] The logic and analysis employed by the district court in *Millan* is also in accord with this conclusion.

5

deducted from that $600,000, including attorney's fees, costs, incentive awards, the settlement administrator fees, and $3,750 LWDA payment of the $5,000 PAGA civil penalties. What remains after those deductions is the "Net Settlement Amount." (*Id*. at ¶ 36.) The Net Settlement Amount is then divided into two separate buckets. Ninety-five percent (95%) of the Net Settlement Amount is allocated to the Class Settlement Amount. (*Id*. at ¶ 10.) This includes the $1,250 "Employee's PAGA Portion" of the PAGA Settlement Amount. (*See id*.)[4] That ***entire*** Class Settlement Amount (including the $1,250) is subject to the above-described 63% minimum distribution floor. Thus, the $1,250 Employee's PAGA Portion is whittled down by the reversionary clause along with all of the other components that make up the Class Settlement Amount.[5]

As mentioned, under the current Settlement Agreement's arrangement, the $1,250 Employee's PAGA Portion is a part of the Class Settlement Amount by definition and is not distinguished in any way from the overall Class Settlement Amount, which is subject to the reversion provision and the 63% Minimum Distribution Floor. (Settlement Agreement at ¶¶ 10, 69(a).) The parties appear to suggest that because they are distributing at least $1,250 to the class, the court should construe the distribution(s) as including the entire Employee's PAGA Portion. However, that is not what the Settlement Agreement says. It does not treat the Employee's PAGA Portion differently from the rest of the Class Settlement Amount when calculating the reversion.

Reversion of any portion of a PAGA civil penalty is impermissible under the holding in *Iskanian* and under the logic employed by the district court in *Millan*. A settlement agreement

---

[4] The remaining 5% is allocated to the FLSA settlement (*id*. ¶ 27), which is not subject to the 63% Minimum Distribution Floor (*id*. ¶ 69(b)).

[5] On one hand, given counsel's two declarations stating that the $600,000 maximum settlement amount was arrived at by considering the likelihood of succeeding on each of plaintiffs' claims, (Doc. Nos. 19-1 at 20–23; 27), the overall settlement amount may have been $1,250 higher *solely* because of the Employee's PAGA Portion. If this is the case, it provides another reason why subjecting the Employee's PAGA Portion to reversion cannot be allowed. On the other hand, the parties argue that defendant's financial situation warrants a lower settlement amount, suggesting that the Maximum Settlement Amount was negotiated in part merely to reflect the maximum amount defendant could pay. (Doc. No. 35-1 (declaration of defendant's president).)

that allocates funds to PAGA civil penalties and then permits some those same funds to revert to a defendant indirectly exempts an employer from its violation of the law.  Such an agreement is "against public policy and may not be enforced." *Iskanian*, 59 Cal. 4th at 382 (quoting Cal. Civ. Code § 1668).  Moreover, it is clear that PAGA is "a law established for a public reason [and] cannot be contravened by a private agreement." *Id.* at 383 (quoting Cal. Civ. Code § 3513).  Thus, much as an employee waiving his or her right to sue under PAGA is impermissible as contravening a law established for a public reason, so too is an employee permitting reversion of funds won under PAGA's civil penalties that are to be distributed specifically to aggrieved employees.

Fortunately, it seems likely that this situation will be fairly easy to remedy.  Under the current Settlement Agreement, the calculations begin with the $600,000 Maximum Settlement Amount.  Attorney's fees, costs, incentive awards, settlement administrator fees, and the $3,750 LWDA portion of the $5,000 PAGA civil penalties are then deducted from the $600.000.  Next, 95% of what remains is placed into the Class Settlement Amount, resulting in a Class Settlement Amount of $324,556.03.  As mentioned, this Class Settlement Amount includes the Employee's PAGA Portion.  Of that $324,556.03, 63% (or $204.470.30) will be distributed to the participating class members, with the remainder (less some tax payments) reverting to defendant.  In the end, under the current arrangement, the participating class members will receive shares from a fund of $204,470.30.

To cure the PAGA violation here, the parties could amend their Settlement Agreement to treat the $1,250 Employee's PAGA Portion not as part of the Class Settlement Amount but instead as a <u>deduction from the Maximum Settlement Amount</u>.  Doing so would result in a slightly lower Class Settlement Amount of $323,306.03.[6]  Applying the Minimum Distribution Floor (63%) to that amount one arrives at $203,682.80.  Under this alternative arrangement, the class members would <u>also</u> receive the full $1,250 portion allocated to them under Labor Code

/////

/////

---

[6] $324,556.03−$1,250=$323,306.03.

7

§ 2699(i) as part of the PAGA penalties. Thus, class members would receive shares from a slightly higher total fund of $204,932.80.[7]

The difference between these two scenarios is small in this case: $462.50. To reiterate, the PAGA issue here is caused by the fact that under the current Settlement Agreement, funds that are allocated to the Employee's PAGA Portion are subject to reversion, resulting in a $462.50 lower total distribution than would otherwise occur. Despite the *de minimis* nature of the issue in this case, the parties, not the court, must amend the agreement on their own. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ("Neither the district court nor this court have the ability to delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." (internal citations and quotations omitted)); *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) (quoting *id.*). If the only changes made to the Settlement Agreement are to correct this PAGA issue, the class will not need to be provided with further notice. In this regard, courts do not require notice of minor amendments to settlement agreements to absent class members if the amendments make the agreement more favorable to the class. *See Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 596 (N.D. Cal. 2020) ("The Court also finds that additional notice of the amendment to the settlement is not warranted because, given the limited nature of the amendment and the fact that it made the settlement more favorable, no reasonable class member who chose not to opt out after receiving notice of the original settlement would decide to opt out based on the modified and improved settlement."); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 330–31 (N.D. Cal. 2018) ("[W]hen the modification [made after a final approval hearing] makes the settlement more valuable to the class, courts have routinely concluded that notice [of the modification] is unnecessary.").

**B.     Signs of Collusion**

The court has previously expressed hesitations about possible collusion between the parties with respect to this settlement. (*See* Doc. Nos. 24 (findings and recommendations, recommending granting preliminary approval); 26 at 2 (order for additional briefing); 28 at 7–9

---

[7] $203,682.80+$1,250=$204,932.80.

8

(order adopting findings and recommendations to grant preliminary approval and noting that "The parties are forewarned that if it appears defendants are likely to receive an unwarranted windfall from the reversion, the court is unlikely to grant final approval of the settlement."); 36 (findings and recommendations, recommending granting final approval, and discussing reversion at length); 37 (ordering additional briefing concerning aspects of reversion).)

The magistrate judge discussed the possibility of collusion in depth in the pending findings and recommendations. (Doc. No. 36 at 38–45.) In addition, the undersigned inquired about relative response rates between defendant's current and former employees. (*See* Doc. No. 37.) If response rates were lower among *current* employees, that would possibly indicate that defendant pressured class members over whom it has authority not to participate. However, in fact, the response rate is higher among current employees. (Doc. No. 38-1.) Moreover, defendant's president has filed a declaration stating that defendant had taken several affirmative steps to increase the response rate among its current employees. (Doc. No. 38-2.) The court therefore adopts the findings and recommendations' reasoning concerning the potential for collusion.

## C. Other Aspects of Settlement Agreement

The court briefly notes that it finds the Settlement Agreement is otherwise fair, reasonable and adequate. At the final approval stage, courts reviewing proposed settlement agreements must ensure that the agreements are fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). In making that determination, courts must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

9

|   |   |
|---|---|
| 1 | (iv) any agreement required to be identified under Rule 23(e)(3); and |
| 2 | |
| 3 | (D) the proposal treats class members equitably relative to each other. |

*Id.*

Here, consideration of the Rule 23(e)(2) factors would, but for the reversionary clause related to the PAGA aspect of the settlement, incline the court to grant final approval. First, class representatives and counsel have litigated this case for years and, as discussed above, the court does not conclude that they have colluded. *See* Fed. R. Civ. P. 23(e)(2)(A). Second, the agreement was reached after an arm's-length negotiation which involved a professional mediator. (*See* Doc. No. 33-4 ¶ 8.) This also favors approval of the settlement agreement. *See* Fed. R. Civ. P. 23(e)(2)(B). Third, other than with respect to the PAGA issue identified above, the court agrees with the analysis set forth in the findings and recommendations that the relief provided to the class is adequate. The magistrate judge carefully considered the risks and delay of further litigation, as compared to the amount offered in the settlement. (*See* Doc. No. 36 at 19–31.) The method of distribution is reasonable; the settlement administrator will distribute payments by check to all payees—including counsel and class members—after the settlement is fully funded. (Settlement Agreement ¶¶ 62(b), 71(g).) The parties have sufficiently established that a delayed funding of the settlement amount is reasonable in this instance. (Doc. Nos. 19-2 ¶¶ 12–13 (declaration of defendant's president concerning need to pay settlement amount over a twelve-month period); 35-1 ¶¶ 5–6 (additional declaration concerning the same).) For purposes of determining the adequacy of the class's recovery only, *see Briseno v. Henderson*, 998 F.3d 1014, 1024–25 (9th Cir. 2021) (noting the attorneys' fees must be considered when determining class settlement is adequate), the attorneys' fees are above the benchmark in this circuit, but the 35% of the settlement amount requested by counsel is not so high to warrant rejection of the settlement itself. Accordingly, the court finds that there is otherwise adequate relief for the class. *See* Fed. R. Civ. P. 23(e)(2)(C). Fourth, class counsel and plaintiffs filed declarations indicating that there were no other agreements that would need to be disclosed under Rule 23(e)(3). (Doc. Nos. 27

¶ 70; 33-2 ¶ 16; 33-3 ¶ 16.) This factor therefore favors approval. *See* Fed. R. Civ. P. 23(e)(2)(D). Finally, the settlement proposal treats class members equitably relative to each other; participating class members are paid based on the number of weeks they worked. *See* Fed. R. Civ. P. 23(e)(2)(E). Accordingly, other than with respect to the reverting of the Employee's PAGA Portion, the settlement agreement could otherwise be approved.

**D.    Attorneys' Fees and Costs and Incentive Awards**

Because the court is denying the motion for final approval, the court declines to address the merits of plaintiffs' motion for attorneys' fees and costs and incentive awards at this time. (Doc. No. 33.) If the parties reach another settlement agreement and file renewed motions, the court will consider attorneys' fees at that time.

**CONCLUSION AND ORDER**

Accordingly,

1. The court declines to adopt the magistrate judge's February 10, 2021 findings and recommendations (Doc. No. 36);
2. Plaintiffs' Motion for Final Approval and Motion for Attorneys' Fees, Costs and Incentive Awards are DENIED WITHOUT PREJUDICE (Doc. Nos. 32 & 33);
3. If the parties submit a revised settlement agreement as part of a renewed motion for final approval, they need not re-brief matters that have previously been briefed but are directed to submit a redlined version of any amended settlement agreement along with targeted briefing addressing any changes made in the settlement; and
4. The undersigned will retain this matter, and any renewed motion for final approval of a revised settlement agreement is to be directed to the undersigned.

IT IS SO ORDERED.

Dated:   **August 12, 2021**                                      *Dale A. Drozd*
                                                                                        UNITED STATES DISTRICT JUDGE

11