UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN FERRELL, et al.,<br><br>                    Plaintiffs,<br><br>         v.<br><br>BUCKINGHAM PROPERTY MANAGEMENT,<br><br>                    Defendant. | No. 1:19-cv-00332-JLT-BAK (EPG)<br><br>ORDER GRANTING MOTION FOR FINAL APPROVAL AND GRANTING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS<br><br>(Docs. 43 & 44) |

Kevin Ferrell and Cheryl Baker, individually and on behalf of others, filed renewed motions for final approval of their class-action settlement agreement and for attorneys' fees and costs on October 19, 2021. (Docs. 43 & 44.) These motions replace the previous motions, filed on January 6, 2021 (Docs. 32 & 33), which the Court denied because portions of the Private Attorney General Act payment were scheduled to revert to Defendant Buckingham Property Management (Doc. 39). The Court's order noted the settlement agreement could otherwise be approved. (*Id.* at 11.)

In this formulation, the only changes to the settlement agreement were the ones the Court found objectionable. (*Compare* Doc. 39 (order) *with* Doc. 43-2, Ex. 1 (amendment to settlement agreement).) Accordingly, the Court will grant the motion for final approval of the class-action settlement (Doc. 43).

The Court's previous order did not address the original motion for fees, costs and

enhancements. Plaintiffs have now filed a revised motion. (Doc. 44.) For the following reasons, that motion is granted in part.

**A.   Attorneys' Fees**

This Court has an "independent obligation to ensure that the award [of attorneys' fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. This is because, when fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As such, the district court assumes a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. *In re Mercury*, 618 F.3d at 994; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *W. Publ'g Corp.*, 563 F.3d at 968.

The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. 14-cv-08822-SJO-E, 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). The Ninth Circuit has generally set a 25 percent benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*, 290 F.3d at 1048–50; *see also In re Online DVD-Rental*, 779 F.3d

2

at 954–55.  Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.  The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable.  Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779 F.3d at 955.

Class counsel has requested 35% of the common fund in attorneys' fees, amounting to $210,000.  (Doc. 44.)

### 1. Percentage of the Fund

There is a three-step process to apply the percentage-of-the-fund method:

> First, the court will ascertain the size of the fund against which the percentage will be taxed.
>
> Second, the court will review the percentage counsel seek, ensuring that the fee resulting from application of that percentage is reasonable.
>
> Third, the court will sometimes undertake a lodestar cross-check, comparing the percentage award to the time counsel expended on the case at the prevailing hourly rates, to further ensure the fee's reasonableness.

5 Newberg on Class Actions § 15:68 (5th ed.); *cf. Vizcaino*, 290 F.3d at 1050-51 (approving use of lodestar cross-check).

Notwithstanding the reversionary nature of the settlement agreement, the Court must use the maximum settlement amount in step one. *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (reversing district court's percentage-of-the-fund calculation of attorneys' fees in settlement agreement where district court based percentage on amount claimed, not amount possible to be claimed); *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569, at *12 (E.D. Cal. Sept. 2, 2011) ("It is well established that, in claims made or class reversion cases where there is a maximum fund, and unclaimed funds revert to the defendant, it is appropriate to award class fund attorneys' fees based on the gross settlement fund." (citing

3

1  sources)). Accordingly, the size of the fund is $600,000.

2  Class counsel's request of 35% exceeds the 25% benchmark in this circuit. Thus, the

3  Court looks to see whether there are "special circumstances" to adjust the percentage recovery "in

4  light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Az.*

5  *Citrus Growers*, 804 F.2d 1301, 1311 (9th Cir. 1990). The Court looks to the following factors:

> the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 954-55. These factors are non-exhaustive. *Steiner v. American Broadcasting Co.*, 248 F. App'x 780, 782 (unreported) (9th Cir. 2007) ("In *Vizcaino*, we did not set forth narrow legal standards cabined by the particular set of circumstances that the district court had found relevant. Rather, we emphasized that in selecting a reasonable percentage fee award in a common fund case the district court must consider all relevant circumstances.").

The first factor is whether the class counsel achieved exceptional results. The reversionary settlement amounts to approximately 5% of the maximum settlement possible. (Doc. 28 at 3 (court's calculation of maximum settlement amount).) Counsel argues the requested percentage is reasonable because the class will obtain immediate relief. (Doc. 44 at 22–23.)[1] Counsel does not explain why that makes the recovery exceptional. In fact, the requested $210,000 in fees is almost as much as the $221,991.58 going to the class.[2] The parties' proposed settlement agreements have been rejected three times for being insufficiently favorable to the class: twice by the state court and once by this Court. (*See* Docs. 1 ¶¶ 26–34 (noting two rejected settlements at state court); 39 (previous order denying motion for final approval).) Accordingly, this factor does not weigh in favor of an enhancement.

The second factor is whether the case was risky. Counsel argues it was but uses

---

[1] The relief is far from immediate. In part because the parties have had three settlement agreements rejected, this case has proceeded for nearly eight years.
[2] $203,722.18 + $1,250.00 + $17,019.40 = $221,991.58.

4

1    boilerplate arguments. (Doc. 44 at 20.) A main risk identified by Plaintiff in his motion for final
2    approval is Defendant's financial situation—or ability to pay a substantial judgment. (Doc. 32 at
3    16–17.) The parties briefed this issue after the final approval hearing. (Doc. 35.) The findings
4    and recommendations for the initial motion for final approval found that counsel "performed due
5    diligence and properly considered the financial condition of Defendant when structuring the terms
6    of the Settlement Agreement." (Doc. 36 at 21 n.4.) Thus, the Court finds support to increase
7    beyond the benchmark due to the riskiness of the case.

8          The third factor is whether counsel generated non-cash consideration to the class.
9    Counsel does not argue that it did. The fourth factor is the market rate for the particular field of
10   law, when appropriate. Counsel does not argue that this factor is relevant. The fifth factor is the
11   burdens on class counsel. This case was initially filed in 2014. (Doc. 1-1 (state court summons
12   and complaint).) However, much of the delay was due to counsel's failure to obtain an
13   approvable settlement agreement. Therefore, the importance of this factor is reduced. The sixth
14   factor is whether this was handled on contingency. Counsel avers that it was. (Doc. 44-4 ¶ 10.)

15         Counsel also argues that their skill and reputation favor an additional award. The Court
16   does not find this factor relevant here given the three rejected settlement agreements. After
17   weighing the factors, the Court finds that the circumstances do not warrant an upward departure
18   from the 25% benchmark. Although the reversionary portion of the settlement agreement could
19   warrant decreasing the percentage below the benchmark, the Court will not because counsel has
20   litigated this case for nearly eight years.

21             2.    <u>Lodestar Crosscheck</u>

22         Counsel argues for a lodestar amount of $520,776, based on 500.1 hours at an hourly rate
23   of $780 and 190.8 hours at an hourly rate of $685. (Doc. 44-1 at 24.)

24         Where a lodestar is merely being used as a cross-check, the court "may use a 'rough
25   calculation of the lodestar.'" *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662-OWW-MJS,
26   2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret*
27   *Stores, LLC*, No. 06-cv-04149-MMM-SHx, 2008 WL 8150856 (C.D. Cal. July 21, 2008)).
28   Beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, a

lodestar multiplier is may be applied.  "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 NEWBERG ON CLASS ACTIONS § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (quoting NEWBERG).

In its order granting preliminary approval, the Court warned Plaintiff's counsel that "the assigned magistrate judge will carefully re-examine the award of attorneys' fees and conduct a final lodestar cross-check." (Doc. No. 28 at 7.)  The magistrate judge noted that the difficulties of performing a cross-check because of the parties' block billing. (Doc. 36 at 52–56.)  Nonetheless, the magistrate judge conducted a cross-check at the initial approval stage—which used the same calculations for the lodestar crosscheck as at final approval (*compare* Docs. 33 & 44)—and determined that the cross-check showed a lodestar amount of $208,310.40 after discounting for block billing and excessive rates. (Doc. 36 at 56.)  If the Court were conducting a full analysis, it would likely find an even lower number because the Court finds that many entries were excessively billed.  Counsel billed 15 hours to negotiate and to draft the first settlement agreement, 9.5 hours for the second, and 14.25 for the third. (Doc. 44-4 at 24.)  The first two settlement agreements look substantially similar and appear to be based on a form. (*Compare* Doc. 1-10, at 46–83 *with* Doc. 1-13, at 2–42.) *See also Ruiz v. Towne Air Freight, Inc.*, No. CV 15-2853 DWF (SSx), 2018 WL 5936551, at *2 (C.D. Cal. March 13, 2018) (for some of the same counsel as here, criticizing number of hours billed because "counsel's charges for tasks such as discovery, drafting, research, etc., appear clearly excessive for counsel that file so many very similar cases.").  Moreover, it seems unreasonable to bill the class for the entirety of drafting settlement agreements that courts determined were unfair to class members.  Accordingly, the Court finds that a lodestar crosscheck does not warrant an increase from the Ninth Circuit's

6

benchmark.

**B.      Remaining Costs**

The motion also contains requests for expenses of class counsel, representative enhancements, and settlement administrator costs. Specifically, class counsel Lawyers for Justice PC request $22,227.07 in costs and Protection Law Group, LLP requests $385 in costs. Each of the two named Plaintiffs requests $3,000 in representative enhancements. The settlement administrator is set to be paid $16,000. (Doc. 44.) These amounts were the same in the original fee motion. (*See* Doc. 33.) The magistrate judge found them to be reasonable and recommended approving them for the initial motion for final approval. (*See* Doc. 36 at 57–59.) The Court agrees and will award those amounts.

## CONCLUSION

The Court will grant the motion for final approval and grant, in part, the motion for attorneys' fees and costs. Because the attorneys' fees are being reduced below the requested amount to $150,000, the remaining amounts being provided to the PAGA class and the FLSA collective will change. Accordingly, the Court will order Plaintiffs to file a revised proposed order. Accordingly,

1. The Court grants the motion for final approval (Doc. 43);
2. The Court grants, in part, the motion for attorneys' fees and costs (Doc. 44), as set forth above; and
3. Within 21 days, the parties shall file a revised proposed order.

IT IS SO ORDERED.

Dated:   **January 25, 2022**

*/s/ Jennifer L. Thurston*
UNITED STATES DISTRICT JUDGE

7